IN RE ESTATE OF CLARK SMITH.

L. V. RUSSELL, Administrator, Appellee, v. CHARLES R. SMITH, Appellant.

No. 40132.

JUNE 23, 1930.

564

*Howard L. Bump,* for appellant.

*Curtis W. Gregory* and *Harry G. Wifvat,* for appellee.

MORLING, C. J.—Clark Smith made his will, dated December 28, 1921, by which he gave his residuary estate, after the death of his wife, to his four children, including defendant, Charles R. Smith, to be divided share and share alike. He died March 12, 1925. His wife, Mary E. Smith, had signed notes as surety for Charles R. Smith. In part renewal of one of these notes, Charles R. Smith and Mary E. Smith, on March 6, 1924, signed a note to the bank of Waukee for $950. Mary E. Smith at one time had a checking account on that bank. This account was closed, October 14, 1921, after which Mary E. Smith checked on the account carried in the name of Clark Smith. Clark Smith had other funds. Neither he nor Mary E. Smith was borrowing money, or carrying any paper except such as they signed as surety for Charles R. Smith. Clark Smith notified the bank:

"That Mary E. Smith was not to have any information about surpluses or funds that he had on interest. She was to have a general checking account; his checking account was to be hers,—a general account,—and the money on interest was to be kept confidential. * * * that information was given. It was a couple of years before his death. * * * He gave as a reason the fact that mother, I believe he called her, was helping Charley, and that mother could not resist loaning Charley money and signing notes with him, etc., and he was trying to stop it."

Charles R. Smith and Buck had a farm partnership. They had a sale of the partnership property on February 15, 1924, or a few days prior to that time, from which Charles's share was $597.40. Charles's personal property was also sold, netting him $126.73. One claim of defendant's is that the mother, Mary E. Smith, was paid out of this sale. Charles R. Smith, on October 8, 1923, had given his mother, Mary E. Smith, a mortgage for $2,200 upon his interest in this personal property. Charles R. Smith apparently is laboring under some disability, which prevented him from testifying. Mary E. Smith executed the renewal note in question for $950 on March 6, 1924, about three weeks after the sale. The proceeds of the sale were put in the

bank which held the note, and checked out. When, or for what purpose, does not appear; but, on March 11, 1924, Clark Smith and Mary E. Smith together went to the bank. Clark Smith signed a check for $951.06 on the account carried in his name, and with it took up the $950 note. The check has the notation: "Note of Chas. R. Smith #17748 and interest." This is the $950 note.

I. Defendant's propositions with respect to this payment, and similarly with respect to the payments made by Mary E. Smith, considered later, are:

"Proposition One. The proof is not sufficient to establish that there is any debt due from Charles R. Smith to the estate of Clark Smith.

"Proposition Two. That, if it is true that Clark Smith paid the note which the bank of Waukee held, signed by Charles R. Smith and Mary E. Smith, he was not obligated on this note in any manner, and by so paying it became a volunteer, and neither he nor his administrator could recover, in a strict legal sense.

"Proposition Three. Any sum of money given or paid by a father who dies testate shall not be treated as an advancement to the heir unless it clearly appears in the will that it was the intention of the testator that it should be so charged against him."

The proof of the payment for the benefit of defendant is clear.

The claim of the administrator is not based on the statute governing advancements, Section 12029, Code, 1927. The claim of the administrator is that there was an ademption of the bequest to Charles R. Smith to the extent of the $951.06 payment. The will was made before the payment. The theory underlying the doctrine of ademption is that the testator, standing *in loco parentis*, is presumed, by conferring a substantial benefit upon the child after the making of the will, not to have intended that the child should receive a double portion of the estate, but is presumed to have intended an ademption. *In re Estate of Mikkelsen*, 202 Iowa 842. The will and the testimony show that testator intended equality among his children, and was opposed to the loans to Charles. It cannot be held that he intended to prefer Charles in the distribution, by means of the payment in

controversy. Ademption is decreed, not because of the existence of an indebtedness from the child to the parent,—not by way of set-off,—but to preserve equality of benefits, as testator presumably intended. The fact that the benefit was voluntarily given, or the payment for the benefit of the child volunteered, and that no debt resulted from it, does not interfere with the application of the doctrine of ademption. It is not necessary that the will should show an intention that subsequent benefits should be charged against the child.

Defendant urges that, in the cases in which ademption has been allowed, ''the debt between the heir and the ancestor has been evidenced by written instrument, and there is no question as to the debt.'' The cases do not turn, however, upon the quality of the evidence by which ''the debt''—the subsequently conferred benefit—is established. That the $951.06 here involved was in fact paid by Clark Smith on a debt owed by Charles R. Smith, and for his benefit, is not seriously contested.

II. Mary E. Smith's will is dated February 10, 1924, and bequeaths the residuary estate after the death of her husband to the four children, share and share alike. She died March 16, 1925.

Defendant's propositions with respect to the moneys paid by Mary E. Smith are that the evidence is not sufficient to establish the claim; that the evidence shows that the debt has been paid; that an advancement will not be treated as an advancement where the testator died testate, unless it clearly appears in the will that the testator intended that such sum should be charged against the heir.

The evidence shows that Mary E. Smith signed, as surety with Charles R. Smith, a note to Foft, dated December 1, 1923, for $100, and on the same date, signed, as surety with Charles R. Smith, a note to Mrs. Carr, for $150. On these notes, on December 24, 1924, Mary E. Smith made small payments, and on March 5, 1925, paid the balance in full. Defendant's wife, Sarah Smith, testified:

''We moved to Minnesota, the first of March, 1919. * * * At the time we moved to Minnesota, we sold a great deal of the personal property.''

She further testified that they left a thousand dollars of the

proceeds with Clark Smith; that Clark Smith afterwards sent them $700 or $800; that, about that time, the parents gave to each of the children $1,000. They came back from Minnesota November 1, 1920. Went on the Buck farm in the spring of 1921.

"We bought some stock, when we moved on the Buck farm. His mother signed some of the notes with him for that stock. We finally had a settlement, and sold out the stock on the Buck farm. I knew about the sale and chattel mortgage spoken of. The proceeds of the sale was used to pay our notes that Charley signed with his mother. I do not know the amount that was paid, but the indebtedness due Mother Smith was all paid off when we left the farm. There were two notes,—one was to Foft and one to his sister,—that were not paid. I know of my own knowledge that those notes have been paid by Charley Smith. We borrowed the money on the 80 acres in Minnesota, and paid those notes with it. We borrowed on the Minnesota land $300 from C. M. Johnson."

She says they borrowed the money in December, 1924.

"I do not know how they [the notes] were paid. We put the mortgage on the farm * * * My husband took the money to Waukee and paid Mother Smith. It was not paid in December. They were short of money until their interest money was due, on first of March, and this money was paid over to them. * * * Q. So, then, you really do not know anything personally, yourself, about Mr. Foft, getting the money? A. No, sir, only that Mother Smith sent the receipts to us, that the notes were paid, and I suppose he got the money. * * * I just went down and signed the mortgage. * * * Q. You do not know whether your husband took the money into the bank and turned the draft or check over, or what he did? A. No."

The witness produced a letter in an envelope postmarked March 6, 1925, which, after speaking of health and family matters, proceeds:

"Will send the receipts Foft gave me will keep the notes. * * * dont worry we have all done the best we can and that is

all we can do. * * * do come out soon and have mortgage cancelled.''

The mother did keep the notes. The receipts show the payments on March 5, 1925, by Mrs. Smith of the two notes in question. It is not now argued that the proceeds of the farm sale or personal property were used to pay Mrs. Smith, as, from the dates and other circumstances, it cannot be. It is not explained why, if defendant took the money to Waukee to pay his mother, she would be sending by mail receipts as money paid by her, and keeping the notes. The wife's testimony is self-neutralizing, and must be disregarded. Defendant's other propositions in the matter of the Mary E. Smith estate are disposed of by the previous discussion.—*Affirmed.*

EVANS, DE GRAFF, ALBERT, KINDIG, and WAGNER, JJ., concur.