LAKE v. HARRINGTON.

Division B. Nov. 20, 1950.

No. 37647 (48 So. (2d) 845)

H. V. Watkins and Watkins & Eager, for appellant.

**D. C. Enochs**, for appellee.

**Roberds, P. J.**

The question for decision herein is whether a general pecuniary legacy of $10,000 to Mrs. Viola Batte Harrington, contained in the will of Mrs. Viola E. Lake, was satisfied in whole or in part, by payments made by the testatrix to Paul B. Harrington, the husband of Mrs.

Viola Harrington, under the circumstances hereinafter shown. The chancellor held that no ademption resulted, from which holding the executor appeals.

The question is grounded in this state of facts and circumstances:

Mrs. Lake executed a will June 16, 1940, embodying this provision: "It is my intention during my lifetime to give to Mrs. Viola Batte Harrington a home, or the money with which to buy or build a home. If, and only if, I have not done this during my lifetime, I give and devise to the said Mrs. Viola Batte Harrington the sum of $10,000.00 in cash and direct my Executors to pay the same over to her. In event of the death of Mrs. Viola Batte Harrington prior to the paying over of this money to her by my Executors, the legacy in her favor not to lapse, but to go to the legal issue of her body, if any, and if none, then it is to lapse and is to go into the trust fund known as The Lake Memorial Library Fund, provided in Item VI of this will."

On January 22, 1944, she executed another will, expressly revoking all other wills theretofore made by her, which contained the same provision. Mrs. Lake departed this life June 14, 1947. The 1944 will was duly admitted to probate in Hinds County, Mississippi.

Between the making of the two wills, and beginning on September 30, 1940, and ending January 14, 1941, Mrs. Lake paid, by five checks, to Paul B. Harrington the total sum of $7,300. The executor says these payments satisfied, in entirety or pro tanto, the legacy to Mrs. Harrington. As stated, the chancellor held otherwise.

This is the background: Mrs. Lake's husband died in 1912. They had been resident citizens of Jackson, Mississippi, many years prior thereto, and she continued to be such citizen until her death. Mrs. Lake was left a large estate and she preserved and added to it, so that at the time of her death her personal property aggregated nearly a half million dollars. The record does not disclose the value of her real estate. She did not marry

again and, so far as the record discloses, had no children. Her home was near that of the Battes, father and mother of Viola Batte (Harrington). Mrs. Lake was present at the birth of Viola, who was named for Mrs. Lake. Through the years, as Viola grew to womanhood, a very close relation existed between Mrs. Lake and the Battes, especially between Mrs. Lake and Viola. After Viola's marriage she and her husband, for some several years, rented an apartment from Mrs. Lake and lived adjoining, or quite near, her. To the date of her death Mrs. Lake called Mrs. Harrington by the affectionate name of "Baby". A girl and boy were born to the Harringtons. Mrs. Lake loved them dearly. Much of the time they were in, and played about, her home. That was the situation when Mrs. Lake executed her will in 1940. In 1940 Mrs. Lake noticed in a newspaper that Mr. Harrington had purchased a lot in Jackson located some ten or twelve blocks from the Lake home. She mentioned that to Harrington, who told her he had bought the lot for the purpose of building a home thereon. In fact, Harrington testified ". . . the house had been started and she asked us when the first money was due on the house . . .". Harrington further testified, without contradiction, "She said she hated for the children to move away that far from her, but if I was going to build a house she wanted to help me with the house". Mrs. Lake directed the checks be drawn to Harrington, which was done. Mrs. Harrington prepared three and Mrs. Lake two of the checks. All, of course, were signed Mrs. Lake. They were for different amounts, according to the progress of the work, and, as above stated, ran from September 1940, to January 1941, and aggregated $7,300. It is further shown, in this connection, that Harrington himself paid $1,000 for the lot, title to which was taken in his name, and that he also paid out in the construction of the home, fees of the architect, etc., some $1,500 more than the amount Mrs. Lake advanced to aid in building the house. Mrs. Lake had

nothing to do or say about the plans and specifications for the Harrington house. She made no suggestion as to the kind of building which should be constructed, although during its construction Mrs. Harrington did come for her a number of times and they went out to see it.

The Harringtons did not know Mrs. Lake had a will, and, of course, knew nothing of a provision in favor of Mrs. Harrington, nor did Mrs. Lake, during the time of making these payments to Mr. Harrington and during the construction of the house, mention to either anything about a will.

The Harringtons moved to their new home. The relation between them and Mrs. Lake continued the same as before. They, with their children, very frequently visited in the Lake home, and they often came for Mrs. Lake and carried her to their home.

In January 1944, Mrs. Lake decided to make four changes in her will. One as to the trustee. In the 1940 will she had nominated Mr. Vaughn Watkins, Sr., an able and trusted attorney, as trustee. He died January 6, 1944. She then designated a local bank as trustee. In the first instrument she named Robert E. Lake both executor and trustee. The last will made him executor only. She changed the name of a school for the support of which she had provided a large fund, and, fourthly, she greatly enlarged the authority and powers of the trustees of a library fund created by both wills. She called to her home Mr. Vaughn Watkins, Jr., a prominent attorney of Jackson, and son of Vaughn Watkins, Sr. She carefully explained to him she wanted to make a new will containing the outlined changes. Mr. Watkins made note of the desired changes. He took the old will to his office and wrote the new will. He then carried the new will to her home. There, in the presence of Robert Lake and the two subscribing witnesses to the will, he, according to his evidence, read slowly, carefully and distinctly to Mrs. Lake the new will, including the legacy to Mrs. Harrington. All admit Mrs. Lake thoroughly under-

stood every provision and phase of the will. It is shown that, in order that no mistake might occur, she initialed each page, the will consisting of some fifteen pages. The provision to Mrs. Harrington consumed the greater part of one page. Mr. Watkins did not know when the 1944 will was executed Mrs. Lake had aided Mr. Harrington in the erection of his home. Mrs. Lake never mentioned the matter. It is conceded by all that Mrs. Lake was a lady of unusually strong intellect and determination. At various times in her life she had been a member of various local and state boards administering charity and public funds. Likewise, it is agreed she was a careful, prudent business woman. She had successfully managed and preserved and added to a large estate, consisting of real and personal property. It might be added that there were only three individual beneficiaries in her will. They were Mr. Robert Lake, her nephew by marriage; Miss Beulah Esminger, her sister, and Mrs. Harrington. All the remainder of her estate was bequeathed and devised for the use and benefit of the public schools of Jackson and their auxiliaries, the will setting out a complete scheme for the efficient administration of that trust through the coming years. She lived for three and a half years after executing the 1944 will and made no change therein. The affectionate relation between her and the Harrington family continued to her death.

Was the learned chancellor justified in his conclusion that the payments by Mrs. Lake in aid of the construction of the Paul Harrington residence did not constitute satisfaction of the legacy provided for Mrs. Harrington in the will of 1944? We think so, and, while the record does not disclose the grounds upon which he decided the question, we can conceive of a number of sufficient reasons bringing him to that conclusion.

In the first place, the general rule seems universal that ██ █ legacies can be adeemed only by events occurring subsequent to their creation. Page on Wills, Lifetime Edition, Vol. 4, Sections 1513, 1533 and 1534;

57 Am. Jur. pg. 1094, Sec. 1596; Kreider v. Boyer, 10 Watts Pa. 54, 57; Jaques v. Swassey, 153 Mass. 596, 27 N. E. 771, 13 L. R. A. 566. Indeed, logically it would seem impossible to satisfy a thing which had not already been created. The sole apparent exception to that rule is where a prior advancement is made by a testator to a later named legatee under a binding agreement with such legatee that the advancement is to be in lieu of the later legacy. Page, Sec. 1534, supra. In the case at bar the gifts to Harrington were made three and a half years before creation of the legacy to Mrs. Harrington in the 1944 will. But able counsel for appellant endeavors to avoid the consequences of that situation by the contention that the will of 1944 was simply a republication of the 1940 will, the gifts having been made subsequent to execution of that will. We do not think the contention is maintainable. While many of the provisions in the two instruments are the same, yet the later will contained four important changes. It expressly revoked ''all other wills and testaments'' theretofore executed by testatrix. She did not add a codicil to the old will; she executed an entirely new will. The latter never referred to the former. She went through all the formalities in executing the last will. There is no contention she did not regard this as her will and her only will. Mr. Lake, the Executor named therein and the appellant here, presented this instrument to the chancery court as her last will and testament and procured its probation and establishment as such. There was no republication of the old will.

Again, █ Whether a gift to a legatee operates as an ademption by payment is primarily a matter of actual intent of the testator. In re Wantz' Estate, 137 Neb. 307, 289 N. W. 363; Ellard v. Ferris, 91 Ohio St. 339, 110 N. E. 476. Mrs. Lake well knew, of course, when she executed the 1944 will that she had made these payments to Mr. Harrington. She also was thoroughly conscious of the fact she was providing for the legacy to

Mrs. Harrington. Only three individuals were named as beneficiaries. She initialed the page containing the legacy in question. It is inconceivable that a woman of her intellect and business acumen was not thoroughly conscious of both the fact of prior gifts to Harrington and the subsequent creation of the legacy to Mrs. Harrington.

 Also, it is noted the legacy was to Mrs. Harrington and the payments to Mr. Harrington. While such payments may constitute an ademption under some circumstances, In re Estate of Smith, 210 Iowa 563, 231 N. W. 468; Grogan v. Ashe, 156 N. C. 286, 72 S. E. 372, the fact of payment to a third person has much less weight in establishing that fact than payment to the named legatee.

It is noteworthy that at no time covered by the period of the payments and the construction of the residence, nor at any other time, did Mrs. Lake mention to the Harringtons the fact she had provided for this legacy in either will. Had she intended the payments to be in satisfaction of the legacy she certainly would have taken a receipt therefor, so stating, or would have eliminated the legacy from her last will.

Too, she well might have thought of contingencies under which the constructed house might not have been the home of Mrs. Harrington, who held no title thereto.

Further, it is observed that this legacy was not only to Mrs. Harrington but also to "the legal issue of her body" in case Mrs. Harrington died before receiving it. This had reference to the two Harrington children whom Mrs. Lake loved so dearly. This could have been an important factor bearing upon the intent of Mrs. Lake to keep alive this legacy in her last will.

 But appellant argues that oral proof was made by two witnesses to the effect that at different times Mrs. Lake, in conversation with these witnesses, indicated she intended these payments in satisfaction of the legacy to Mrs. Harrington. It is not claimed that any of these remarks by Mrs. Lake were made in the course of making

these payments. We, therefore, do not pass upon their competency. See In re Cramer's Will, 183 Wis. 525, 198 N. W. 386. The testimony went in without objection, so we will consider it, as presumably the chancellor did in the hearing before him.

Miss Jean McKenzie MacGillivary testified that in the spring of 1940 Mrs. Lake, in a conversation with the witness, referred to the purchase of the lot, and Mrs. Lake regretted the lot was located so far from her home, and, in reply to an inquiry by the witness, Mrs. Lake said she had promised Mrs. Harrington a house and was going to build it; that she had wanted the Harrington family to be closer to her. She also testified she carried Mrs. Lake a number of times to the Harrington home to birthday parties for the children. On one such trip Mrs. Lake said, "I built that house for Baby". Witness said Mrs. Lake never mentioned to her a will. The force of this testimony is weakened, when all the witness said is weighed, by the uncertainty as to exactly what was said and the implication which can be drawn therefrom. For instance, the witness used this expression "She said something about promising—I couldn't tell you the exact words she said, but she said something about building a home for her close", which might indicate the existence of a continuing desire and hope on the part of Mrs. Lake that the Harringtons would some day have a home closer to her, which she would construct for Mrs. Harrington. But these conversations were prior to the execution of the 1944 will. Regardless of the intent of Mrs. Lake when these conversations were had they constituted no barrier to her later making the provision for Mrs. Harrington which she did make in the will of 1944.

Mr. Robert Lake, appellant, was the other witness. He was a bachelor and seems to have lived in the Lake home since 1896. The pertinent part of his direct testimony is that Mrs. Lake said to him at different times she had built a home for "Baby". He could not give the dates, or the approximate dates, of these conversations.

For instance, he was asked by his attorney when the conversations occurred with reference to the time of completion of the house. He replied, "Mr. Watkins, I couldn't swear exactly what time. I don't know. It was during the period of those years. I don't know what date or what year; I couldn't swear to it". On cross-examination, when pressed to give the approximate time and say whether it was before or after 1944, he replied, "I couldn't say whether it was between that period or after, but I know it was all during those years, Mr. Enochs". But there were other elements entering into the weight to be given the testimony of this witness as bearing upon the intention of Mrs. Lake. It is disclosed, as a natural inference from other parts of his testimony, that after the time the Harrington house was constructed, Mrs. Lake frequently referred to her desire to have the Harringtons nearer her. She mentioned giving to Mrs. Harrington a lot in the same block in which her home was located, but the witness objected to that because, in his opinion, Mr. Lake, had he yet been living, would have objected to that. Mrs. Lake talked of other locations for the Harringtons, closer to her home than where they were then living, but not in the same block as her home. In other words, the conclusion might logically have been drawn from the remarks of Mrs. Lake, made after the Harrington house was built, that she hoped to find a suitable location nearer to her which she would give to Mrs. Harrington and on which construct for her a home.

In addition, it is shown that Mr. Lake was one of the executors and trustees in the first will. He was present when it was executed. He knew its contents. He knew of the legacy to Mrs. Harrington. He was made a trustee in the last will. He was present when it was read over to Mrs. Lake. He knew it contained the legacy to Mrs. Harrington. He then knew of the prior payments Mrs. Lake had made on the house, yet, with full knowledge of all of these facts, he never said a word about the

impropriety of the 1944 will containing the legacy to Mrs. Harrington. When pressed about that he gave as a reason for his silence the fact Mrs. Lake was a splendid business woman; that she knew what she wanted to do, and she did not ask his advice. At another place he explained his silence by saying Mrs. Lake had an attorney.

Evaluating, but not passing upon the competency of, this oral proof it fell far short of proving that when Mrs. Lake made the payments on the house, or when she executed the will in 1944, she intended such payments to be in satisfaction of the legacy in favor of Mrs. Harrington, assuming ademption of the legacy could legally result from events occurring prior to its creation. These oral statements of the testatrix, admitted without objection as not being part of the adeeming acts themselves, constituted evidence to be weighed by the chancellor along with the other facts and circumstances bearing upon the issue of ademption. We think his conclusion is not only justified but it is difficult to perceive how he could have found otherwise on this record.

Affirmed.