# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01101-SCT

*HYUNDAI MOTOR AMERICA AND HYUNDAI MOTOR COMPANY*

*v.*

*OLA MAE APPLEWHITE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF AND WRONGFUL DEATH BENEFICIARIES OF DOROTHY MAE APPLEWHITE, DECEASED; CEOLA WADE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF AND WRONGFUL DEATH BENEFICIARIES OF ANTHONY J. STEWART, DECEASED; AND IDA MAE COOPER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF AND WRONGFUL DEATH BENEFICIARIES OF CECILIA COOPER, DECEASED AND KENNETH CARTER*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/2008 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. COLLINS WOHNER, JR. |
| | JIMMY B. WILKINS |
| | THOMAS N. VANDERFORD, JR. |
| | MICHAEL KING |
| | ROBERT WILLIAM MAXWELL |
| ATTORNEYS FOR APPELLEES: | RALPH EDWIN CHAPMAN |
| | SARA BAILEY RUSSO |
| | DANA J. SWAN |
| | C. KENT HANEY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 02/10/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     In this wrongful death, product liability case, the jury awarded the plaintiffs $4.5 million, or $1.5 million for each of three decedents, finding that the automobile at issue was defective in both its design and manufacture.  In an effort to convince this Court to reverse the trial judgment and to render judgment in its favor, Hyundai challenges the reliability of the plaintiffs' three experts on appeal.  We find, from the record before us, that the trial judge did not abuse his discretion in allowing the jury to consider these experts' testimony in reaching its verdict, and that, therefore, Hyundai is not entitled to judgment as a matter of law.  However, because the plaintiffs failed in their duty seasonably to amend their responses to Hyundai's requests for discovery, we reverse the judgment and remand the case for a new trial.

## Facts

¶2.     On July 9, 1995, around 8:00 a.m., Dorothy Mae Applewhite, Cecilia Cooper, and Anthony Stewart were traveling south on U.S. Highway 61 near Dundee, Mississippi.  The three were returning home to Clarksdale after having worked the night shift at the Sam's Town Casino in Tunica.  The car was Applewhite's 1993 Hyundai Excel.  It is unclear who was driving, but the two women were in the front seats, and Stewart was on the rear seat.

¶3.     One of their coworkers, Roland Jordan, was traveling in the same direction on Highway 61 just ahead of the Excel.  Jordan testified that, at first, the Excel was driving normally.  However, at some point, he noticed the car begin to weave.  According to Jordan,

the Excel drifted onto the left shoulder approximately three times. The third time, the Excel came back onto the roadway and swerved into the northbound lane, hitting an oncoming 1993 Lincoln Continental passenger car.

¶4.	The Excel was torn into two pieces. The front portion of the vehicle came to rest sixty feet north of the point of impact. The passenger compartment stayed with the rear of the vehicle and came to rest six to ten feet north of the crash site. Applewhite and Cooper landed on the pavement, and Stewart was found partially inside the passenger compartment. All three died at the scene. The Continental's occupants sustained non-life-threatening injuries.

¶5.	At trial, the plaintiffs undertook to prove that the Excel was not crashworthy due to defects in both its design and manufacture. Plaintiffs adduced the testimony of three expert witnesses: Andrew Webb, an accident reconstructionist, James D. Mundo, an engineer, and Dr. Joseph L. Burton, a forensic pathologist specializing in biomechanics. Webb testified that he had used a computer program to reconstruct the accident and concluded that, had the Excel remained intact, the occupants would have experienced a change in velocity (or delta-v) of thirty-five miles per hour. Dr. Burton testified that at thirty-five miles per hour, it was "more likely than not" that the occupants would have survived the crash. Finally, Mundo opined that, in his expert opinion, the car was defective in both its design and manufacture, and these defects caused the car to come apart during the crash.

¶6.	The defendant's accident reconstructionist, Dr. Geoff Germane, opined that, had the vehicle remained intact, the occupants would have experienced a delta-v ranging from fifty-five to sixty-seven miles per hour. Dr. Burton, the plaintiffs' expert, conceded that a crash is not survivable with a delta-v in excess of fifty miles per hour.

3

¶7. On April 3, 2008, following nine days of testimony, the jury unanimously found that Hyundai was liable for the deaths based on the Excel's defective design and defective manufacture. The jury awarded damages of $1.5 million for each of the three deaths and did not allocate any fault to the driver of the Excel. Hyundai appealed.

## Issues

¶8. Hyundai raises numerous issues on appeal. First, Hyundai argues that it is entitled to judgment as a matter of law because all three of the plaintiffs' experts offered unreliable testimony. Second, Hyundai argues that, in the alternative, it is entitled to a new trial based on six harmful errors: (1) Hyundai was ambushed at trial when Webb changed his opinion; (2) the jury's allocation of 100% fault to Hyundai demonstrates the jury's passion and prejudice in reaching its verdict; (3) Hyundai's crash test videos were wrongly excluded; (4) seat belt evidence was wrongly excluded; (5) prior accidents evidence was wrongly admitted; and (6) the judge erred by refusing to dismiss a sleeping juror. Finally, Hyundai argues that, even if the judgment should stand, the trial judge's imposition of an 8% post-judgment interest rate was unfairly punitive. We find that the trial judge did not abuse his discretion in allowing the jury to consider the plaintiffs' expert testimony. However, the change in Webb's opinion requires reversal. Because the plaintiffs' failure properly and timely to notify the defendant of the change in Webb's opinion is dispositive, we will not address the other issues.

## Discussion

¶9. Whether a party is entitled to a judgment as a matter of law is an issue that we review *de novo*. *Solanki v. Ervin*, 21 So. 3d 552, 565 (Miss. 2009) (citing *U.S. Fid. & Guar. Co.*

4

*v. Martin,* 998 So. 2d 956, 964 (Miss. 2008)). "This Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence." *Spotlite Skating Rink, Inc. v. Barnes,* 988 So. 2d 364, 368 (Miss. 2008) (quoting *Ala. Great S. R.R. Co. v. Lee*, 826 So. 2d 1232, 1235 (Miss. 2002)). We will affirm the denial of a motion for a directed verdict, or a motion for a judgment notwithstanding the verdict, where there is "substantial evidence to support the verdict"; but we will reverse if "the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated." *Martin*, 998 So. 2d at 964 (quoting *White v. Stewman,* 932 So. 2d 27, 32 (Miss. 2006)).

¶10. Conversely, this Court will not reverse a trial court's denial of a motion for a new trial absent an abuse of discretion. *Solanki*, 21 So. 3d at 569 (citing *Pierce v. Cook,* 992 So. 2d 612, 620 (Miss. 2008); *Allstate Ins. Co. v. McGory,* 697 So. 2d 1171, 1174 (Miss. 1997)). "[A] new trial becomes appropriate when a trial court determines that error within the trial mechanism itself has caused a legally incorrect or unjust verdict to be rendered." *Id.* (quoting *White,* 932 So. 2d 27 at 33).

¶11. As for evidentiary matters, including the allowance of expert testimony, this court applies an "abuse of discretion" standard. *Bullock v. Lott*, 964 So. 2d 1119, 1128 (Miss. 2007) (citing *Webb v. Braswell,* 930 So. 2d 387, 396-97 (Miss. 2006)).

> *I. The trial judge did not abuse his discretion by allowing the jury to consider the plaintiffs' expert testimony.*

5

¶12.    Hyundai argues that the trial judge should have granted its motion for a directed verdict and/or its motion for a judgment notwithstanding the verdict because the Excel was not defective and the impact was not survivable as a matter of law.  In making this argument, Hyundai attacks all three of the plaintiffs' expert opinions, alleging that they were unreliable under the standards pronounced in Mississippi Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Hyundai argues that, because this evidence was unreliable, it could not have been relied upon to support the jury verdict.  Therefore, although Hyundai presents this issue as a sufficiency-of-the-evidence argument, it is, in fact, attacking the admissibility of the expert testimony.

¶13.    Mississippi Rule of Evidence 702, which governs the admissibility of expert opinions, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Furthermore, the expert must demonstrate that his or her opinion "is based upon scientific methods and procedures, not unsupported speculation." *Utz v. Running & Rolling Trucking, Inc.*, 32 So. 3d 450, 457 (Miss. 2010) (citing *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 947 (Miss. 2008)).  This Court has embraced the five, nonexclusive factors announced by the United States Supreme Court in *Daubert*, 509 U.S. 579:

(1) whether the expert's theory can be or has been tested;

(2) whether the theory has been subjected to peer review and publication;

6

(3) the known or potential rate of error of a technique or theory when applied;

(4) the existence and maintenance of standards and control; and

(5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Hill v. Mills*, 26 So. 3d 322, 330 n.6 (Miss. 2010) (quoting *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 37 (Miss. 2003)).

¶14.    As with all evidence, expert testimony must be relevant.  M.R.E. 402.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  M.R.E. 401.  "The threshold for admissibility is not great, keeping in mind the fact that Rule 401 favors the admission of evidence when it has probative value."  *Utz*, 32 So. 3d at 457 (citing *Investor Res. Servs., Inc. v. Cato*, 15 So. 3d 412, 417 (Miss. 2009)).  Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 595.

> A.  Hyundai waived its **Daubert** objections as to Webb and Dr. Burton by failing to make contemporaneous objections.

¶15.    As an initial matter, the plaintiffs argue that Hyundai did not preserve this error for appeal because "no proper *Daubert* challenges were made prior to or during trial."  Hyundai concedes that it never sought a pretrial exclusion of the plaintiffs' expert testimony, but argues that it objected to that testimony during trial and that it raised the reliability issue in

7

its motion for a directed verdict and in its post-trial motion for judgment notwithstanding the verdict, thus preserving the issue for appeal.

¶16.    Although a pretrial motion and hearing challenging the admissibility of expert opinions may in some, if not most, cases be a prudent practice, this Court has held that this is not the exclusive means of mounting challenges to such testimony. *Edmonds v. State*, 955 So. 2d 787, 792 (Miss. 2007) (citing *Miller v. Baker Implement Co.*, 439 F.3d 407, 412 (8th Cir. 2006); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001)). This Court has quoted with approval the United States Supreme Court's pronouncement that "[t]he trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Edmonds*, 955 So. 2d at 792 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (emphasis in original)). The United States Supreme Court went on to say:

> Our opinion in *Joiner* makes it clear that a court of appeals is to apply an abuse-of-discretion standard when it "review[s] a trial court's decision to admit or exclude expert testimony." That standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion. Otherwise, the trial judge would lack the discretionary authority needed to both avoid unnecessary "reliability" proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.

*Kumho Tire*, 526 U.S. 137 at 152 (discussing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)).

8

¶17.    While the trial judge has discretion with regard to when and how to decide whether an expert's testimony is sufficiently reliable to be heard by a jury, this does not eliminate the requirement that the party opposing the evidence make a timely objection to its being admitted into evidence.  M.R.E. 103(a)(1).  Mississippi Rule of Evidence 103 provides, in relevant part, that

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

This rule is merely codification of our longstanding case law to the effect that the failure to make a contemporaneous objection to the evidence waives the issue on appeal.  *See e.g., Dep't of Human Servs. v. Moore*, 632 So. 2d 929, 933 (Miss. 1994); *Miss. State Highway Comm'n v. Robertson*, 350 So. 2d 1348, 1350 (Miss. 1977).  "Objections must be made at the time offered in order to object to evidence via appeal."  *Moore*, 632 So. 2d at 933 (citing *Johnson v. Fargo*, 604 So. 2d 306 (Miss. 1992); *Anderson v. Jaeger*, 317 So. 2d 902, 907 (Miss. 1975); M.R.E. 103(a)(1)).  *See also Robertson*, 350 So. 2d at 1350 (citing *Lake v. Harrington*, 210 Miss. 74, 48 So. 2d 845 (1950)).

¶18.    In the present case, all three of the plaintiffs' experts were deposed months before trial.  With the exception of Webb's testimony, which will be discussed below, Hyundai does not argue that their opinions changed at trial.  Thus, Hyundai was well aware of the substance of the plaintiffs' expert testimony and had sufficient opportunity to challenge its reliability before trial.  Instead, Hyundai waited until the trial was underway to make its *Daubert* objections.

9

¶19.    Regarding Webb, Hyundai moved to strike his testimony before trial, not on a question of its reliability, but because of the plaintiff's failure timely to notify the defendant of a change in this expert's calculations.  It was not until after Webb had left the witness stand that Hyundai moved to strike his testimony based on its alleged failure to comply with Mississippi Rule of Evidence 702 and *Daubert*.  The trial judge refused to grant the motion, stating that the "cow [was] out of the barn."  In other words, the trial judge rightly refused to strike Webb's testimony because the defendant had failed to make a contemporaneous objection and the testimony was already before the jury.  *Moore*, 632 So. 2d at 933.  Webb had testified on direct, cross-examination, and redirect before Hyundai objected and moved to strike his testimony.  Thus, we do not find that the trial judge abused his discretion by allowing the jury to consider his opinion.

¶20.    As for Dr. Burton, Hyundai did not object to his testimony as unreliable until it moved the court for a directed verdict at the close of the plaintiffs' case-in-chief.  As with Webb's testimony, we cannot conclude that the trial judge abused his discretion by refusing to strike the testimony of Dr. Burton without a contemporaneous objection.

> B.  *The trial judge did not abuse his discretion by finding Mundo's testimony sufficiently reliable.*

¶21.    Finally, we consider the testimony of the plaintiffs' design engineer, James Mundo.  After Mundo had testified about his qualifications, but before he had given his expert opinions, Hyundai argued to the trial court that Mundo was not qualified to render opinions about the Excel's design.  The trial judge overruled the objection.  Mundo then testified regarding his methodologies.  Hyundai again objected, this time arguing that his opinion was

10

not based on "reliable principles and methods" as required by Mississippi Rule of Evidence 702. The trial judge heard extensive arguments and ultimately ruled that Mundo's testimony was sufficiently reliable to go before the jury. Therefore, in contrast to its belated objections to the testimonies of Webb and Dr. Burton, we find, as the trial judge did, that Hyundai timely raised a ***Daubert*** objection to Mundo's expert testimony.

¶22. Mundo testified that the Excel was not properly designed and that it was not properly manufactured in that the welding of the Excel did not meet the manufacturer's design specifications. Mundo also offered an alternative design of the A-pillar, a beam that connects the roof of the car to its body on either side of the windshield. He testified that his design would make the car significantly stronger and that implementing this design would not be cost-prohibitive to Hyundai.

¶23. Hyundai argues on appeal that Mundo's opinions were unreliable because: (1) he assumed that the Excel was defective because it separated in the crash; (2) Mundo's opinions did not meet the requirements of the Mississippi Product Liability Act (MPLA); (3) he based his alternative design on a single component of the vehicle using a computer program rather than "real-world testing"; and (4) his opinions that certain welds were defective were not sufficient to establish a "material" deviation from the manufacturer's specifications.

*(1) Mundo's assumption that separation is per se defective*

¶24. Hyundai first takes issue with Mundo's statement that "cars aren't suppose [sic] to be breaking into pieces." Mundo conceded that a sufficiently severe crash could cause any car to separate, but he opined that this accident was an "average, middle-of-the-road, common-place type accident." Essentially, Hyundai faults Mundo for relying on Webb's

11

reconstruction and Webb's opinions regarding the severity of the crash. To find error on this point would require us to consider the reliability of Webb's testimony. As discussed above, Hyundai did not raise a timely objection to the reliability of Webb's expert testimony, and, therefore, the trial judge did not err in admitting Webb's testimony. Because this argument is, in actuality, another attempt to attack the validity of Webb's testimony, we decline to find any error respecting this issue.

### *(2) Mississippi Product Liability Act*

¶25.    To support a defective design claim, the plaintiff must prove that

> (i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and,

> (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

Miss. Code Ann. § 11-1-63(f)(i)-(ii) (Rev. 2002). In other words, the danger presented by the defect must be reasonably foreseeable, and a feasible design alternative must have existed.

¶26.    Hyundai's argument on this issue is that Mundo never refuted Hyundai's evidence that the design of the Excel met or exceeded the state of the art for subcompacts in 1993. However, Mundo testified that the design methods he used were available in 1993. While Hyundai presented expert testimony to the contrary, we do not find error in the trial judge's conclusion that this difference of opinion created a fact question for the jury and was not a basis for exclusion.

12

*(3) Alternative A-pillar*

¶27.    Next, Hyundai criticizes Mundo's alternative design because it was "an unvalidated computer simulation of a single component." Mundo used a computer-aided design program to create a simulation of his alternative design to the A-pillar.  Although the computer simulation of Mundo's design alternative was the car's A-pillar rather than the entire frame, he testified at length about how his design would have included the strengthening of welds "throughout the cage structure." Thus, contrary to Hyundai's assertions, Mundo's testimony indicated that his design alternative was not limited to a single component.

¶28.    Hyundai also argues that Mundo's opinions about his alternative design were not reliable without "real-world testing."  In other words, Hyundai argues that Mundo was required to create a model of his alternative design and perform strength tests on the model in order to validate his opinion.  Hyundai does not argue that the computer program Mundo used was somehow flawed.  Rather, we are asked to hold that computer simulations alone are not sufficient to support expert testimony, which we decline to do.  We are not prepared to say that an expert must physically build a model of his alternative design in order to demonstrate its efficacy.  Mundo's utilization of a computer program for that purpose goes to the weight and credibility of such evidence and not to its admissibility.

*(4) Defective Welding*

¶29.    Lastly, Hyundai criticizes the method Mundo used to form his opinion about the car's welds.  To support his theory that the welding was defective, Mundo pointed to nineteen welds that had come apart during the crash, all of which he considered to be defective.  Hyundai criticizes Mundo's methodology, arguing that there are thousands of welds on a

13

vehicle, and Hyundai's welding specifications allow a 10% margin of error in welding. Hyundai notes that nineteen out of three or four thousand do not amount to more than 10%. The plaintiffs defend Mundo's methodology, arguing that he simply was using a sampling technique, and Hyundai does not dispute that sampling is a viable scientific method. As with Mundo's alternative design testimony, Hyundai's arguments on this point were for the jury's resolution, and we cannot say that the trial judge abused his discretion by finding Mundo's testimony sufficiently reliable for purposes of Mississippi Rule of Evidence 702.

### II. Hyundai is entitled to a new trial because the plaintiffs failed timely and properly to disclose changes to Webb's calculations.

¶30. Hyundai argues that it is entitled to a new trial because it was ambushed by changes to Webb's opinion. One of Webb's main contentions was that, had the Excel remained intact, the vehicle would have experienced a delta-v of no more than thirty-five miles per hour. Hyundai deposed Webb on December 18, 2007, at which time Webb gave a detailed explanation of his calculations. On February 6, 2008, Webb signed an *errata* sheet concerning his deposition testimony, changing four variables that he purportedly had used to make his calculations. Most notably, Webb changed the angle of the Excel from twenty-two degrees to forty-four degrees and increased the closing speed of the Excel from sixty-eight miles per hour to seventy-eight miles per hour. Despite these changes, Webb did not alter his ultimate conclusion that the car would have sustained a delta-v of only thirty-five miles per hour had it remained intact.

¶31. At trial, Webb testified about the *errata* sheet, claiming that he had to change several variables because he realized after he had been deposed that he had made some mistakes in

14

his initial analysis. It is undisputed that Webb's *errata* sheet was not meant to correct errors made by the court reporter or to clarify his testimony. On the sheet itself, Webb listed the reason for the changes as "range not asked."

¶32. Hyundai moved to strike Webb's testimony, alleging that it had never received the *errata* sheet and that these changes were a surprise. In response, the plaintiffs argued that the changes were not material because they did not alter Webb's ultimate conclusion. The plaintiffs also produced a letter addressed to one of Hyundai's attorneys and dated February 11, 2008, to demonstrate that they had forwarded Webb's *errata* sheet to the defendant. The trial court heard extensive arguments on the issue and denied the defendant's motion.

¶33. Mississippi Rule of Civil Procedure 26(f)(1) requires litigants to supplement interrogatory responses in regard to "the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony." The rule also imposes a duty *on the parties* to amend a prior response when "the party knows that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." M.R.C.P. 26(f)(2)(B). The failure seasonably to supplement or amend a response is a discovery violation that may warrant sanctions, including exclusion of evidence. ***Ekornes-Duncan v. Rankin Med. Ctr.***, 808 So. 2d 955, 958 (Miss. 2002). Rulings on discovery violations will not be overturned absent an abuse of discretion. ***Id.*** (citing ***Gray v. State***, 799 So. 2d 53, 60 (Miss. 2001)).

¶34. The plaintiffs argue that they had no duty to amend their discovery responses because their February 11, 2008, letter demonstrates that Hyundai was provided the *errata* sheet and

15

therefore had notice of the changes. The trial judge did not make a factual finding as to when Hyundai became aware of the contents of Webb's *errata* sheet, but such a finding is unnecessary and irrelevant to our analysis. Even if Hyundai did receive the *errata* sheet, simply giving the defendant this document did not relieve the plaintiffs of their duties under Mississippi Rule of Civil Procedure 26(f). The purpose of an *errata* sheet is to correct scrivener's errors or provide minor clarification; it is not a means of making material, substantive changes to a witness's testimony. *See e.g., **Garcia v. Pueblo Country Club***, 399 F.3d 1233, 1242 n.5 (10th Cir. 2002) ("A deposition is not a take home examination.") If a witness changes his testimony in a manner that conflicts with prior discovery responses, the sponsoring party has a duty under Rule 26(f) seasonably and formally to amend or supplement the response. ***Choctaw Maid Farms, Inc. v. Hailey***, 822 So. 2d 911, 916 (Miss. 2002). This is the responsibility of the party or parties sponsoring the witness, not the responsibility of the witness.

¶35. The plaintiffs argue that Webb's changes were not material because they did not alter his opinion that, had the car not separated, the occupants would have experienced a delta-v of only thirty-five miles per hour. We disagree. The changes in Webb's calculations were material changes because they were essential components of the basis for his opinion. When Hyundai attempted to cross-examine Webb about his calculations, Webb referred to his *errata* sheet at least seven times to demonstrate that he had corrected his mistakes. It is clear from Webb's testimony that the figures on the *errata* sheet were important to his calculations. Moreover, when Hyundai's experts performed crash testing, they used the figures given by Webb in his deposition in an attempt to refute Webb's testimony. When

16

Webb changed his calculations, the crash test using Webb's initial calculations lost relevance.

¶36. Despite the plaintiffs' failure to comply with Rule 26(f), the trial court refused to grant Hyundai any relief. We find that, in doing so, the trial judge abused his discretion. We do not condone trial by ambush. Hyundai was entitled to full and complete disclosure of the plaintiffs' expert testimony, and neither these plaintiffs nor any other party litigant may rely on a witness's notations on a deposition *errata* sheet as a substitute for formal and timely supplementation. Accordingly, we find that this issue warrants reversal.

## Conclusion

¶37. We hold that Hyundai is not entitled to a judgment rendered in its favor on appeal based on the trial judge's allowing the plaintiffs' expert testimony (which Hyundai asserts was unreliable) to be adduced before the jury. This issue can be revisited on remand, in the event the defendant interposes timely and appropriate objections. However, it was error to refuse relief to Hyundai in consequence of the plaintiffs' failure to amend their responses regarding Webb's opinion under Mississippi Rule of Civil Procedure 26(f). For these reasons, we reverse the judgment and remand the case for a new trial.

¶38. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE JJ., CONCUR.**