Donn E. SCHUCKER, Appellant,

v.

MISSOURI DEPARTMENT OF NATU-
RAL RESOURCES, et al., Mid-State
Mechanical Contractor, Inc., Leadbelt
Materials, Inc., Respondents.

No. 49206.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Oct. 29, 1985.

Motion for Rehearing and/or Transfer
Denied Dec. 17, 1985.

Application to Transfer Denied
Feb. 18, 1986.

George R. Ripplinger, Clayton, for appel-
lant.

Joseph H. Mueller, St. Louis, for Lead
Belt Materials, Inc.

James A. Cochrane, Cape Girardeau, for
Mid-State Mechanical Contractors, Inc.

Thomas A. Ludwig, Jackson, for Mo.
Dept. of Natural Resources.

REINHARD, Judge.

Plaintiff, Donn E. Schucker, brought this
action in tort seeking recovery for personal
injuries he sustained in a motorcycle acci-
dent at St. Joe State Park.  He appeals
from judgments entered in accordance with
jury verdicts for defendants.  We affirm.

In 1976 the State of Missouri acquired
the St. Francois County land upon which

St. Joe State Park was created from the St. Joe Minerals Corporation, a mining company, and the Department of Natural Resources hired Mid-State Mechanical Contractors, Inc. to perform park development construction. Mid-State then entered into a subcontracting agreement with Lead Belt Materials Company, Inc. for the construction of roads and parking areas. Part of the road building process required chat, which Lead Belt removed, as instructed by the Department of Natural Resources, from the huge "tailings" piles that were byproducts of the St. Joe Mineral Corporation's previous mining operations.[1] At the end of each working day Lead Belt "backsloped" the chat mounds where removal had occurred, tapering the piles down to an angle of approximately forty-five degrees. According to a journal kept by Lead Belt, chat removal from the area where plaintiff was injured, known as the "Elvins" tailings pile, was completed on June 27, 1980; however, testimony from Lead Belt's project superintendent could be construed as indicating that work on the "Elvins" chat pile continued up until Thursday, July 3, 1980.[2] In the afternoon of July 3, an unusually severe thunderstorm passed through the area of St. Joe State Park, halting construction until after the Fourth of July Weekend.

On Sunday, July 6, 1980, plaintiff and some friends went to St. Joe State Park to ride motorcycles. After unloading their "bikes" and changing into protective "riding gear", plaintiff and two other members of the party set out for the "Elvins" chat pile. Plaintiff had ridden in this area on numerous occasions, most recently two weeks before. Upon reaching the hill, plaintiff decided to climb one of the steeper portions while his companions, with their smaller motorcycles, ascended less sheer areas of the chat pile. Plaintiff approached the hill at about 35 miles per hour, and he was still travelling at 15 to 20 miles per hour as he neared the top. When he reached the summit he unexpectedly encountered a declivity of nearly 90 degrees.[3] He attempted first to brake his motorcycle, but his front wheel was already protruding over the edge. Plaintiff then accelerated in an effort to "pull his front wheels" up, but this, too, proved unsuccessful as he flipped over the handlebars and fell 20 feet, landing on his buttocks with the motorcycle dropping on top of him. As a result of this accident, plaintiff suffered a compression fracture of the fifth lumbar vertebra and assorted minor injuries.

Plaintiff filed a three Count amended petition against the Department of Natural Resources, Mid-State Mechanical Contractors and Lead Belt Materials. Count I alleged that the Department of Natural Resources was negligent in allowing a dangerous condition to exist on its land without warning plaintiff. Count II alleged that Mid-State had a duty to "conduct its operation within [St. Joe] State Park safely and to avoid creating dangerous conditions by its activities on said premises" under its contract with the State,[4] and that Mid-State was negligent in creating the excavation, failing to warn of the dangerous condition, and/or failing to take action to prevent motorcycle riding in the area. Count III repeated the allegations of Count II except that it referred to Lead Belt instead of Mid-State.

Plaintiff's principal point on appeal is that:

1. At trial plaintiff conceded that the Department of Natural Resources and Mid-State did not remove any chat themselves.

2. It should be noted that all witnesses who testified at trial were called by plaintiff.

3. The origin of the sheer, vertical face encountered by plaintiff was an intensely disputed subject at trial. Plaintiff contended that work on the "Elvins" chat pile was still in progress on July 3, and the rainstorm caused the Lead Belt

crew to forgo the usual "backsloping" that afternoon, leaving the tailings pile without a backside. The defendants maintained that the severe thunderstorm eroded the tailings pile, causing part of it to slide off, and adduced testimony of such erosion at other chat piles.

4. The contract between the Department of Natural Resources and Mid-State, and the subcontract between Mid-State and Lead Belt, were introduced into evidence.

The Court erred in giving instructions 9, 11, 12 and 15 in that the standard of care to be applied to Lead Belt Materials and Midstate Mechanical Contractors conduct was not "ordinary care", but "special precaution to protect the public from injury due to defendant's activities," pursuant to their contract with the Missouri Department of Natural Resources.

Instructions No. 9 and No. 11 were verdict directors against Mid-State and Lead Belt respectively, originally submitted by plaintiff, while Instruction No. 12 was a converse instruction submitted by Lead Belt. All referred to "ordinary care". Instruction No. 15 was the definition of negligence found in MAI 3rd 11.02(I), which refers to the degree of care that an "ordinary careful and prudent person would use under the same or similar circumstances", and was submitted by Mid-State. Plaintiff requested that the court give verdict directing instructions against Mid-State and Lead Belt which were phrased in terms of failure to exercise "special precautions" rather than "ordinary care", and objected to defense instructions which applied the ordinary care standard to those two defendants. In effect, plaintiff argued that the contract raised the standard of care that defendants Mid-State and Lead Belt were required to exercise. The court denied his request and overruled his objection.

Plaintiff's proposed instructions are not supported by the law. Plaintiff has cited no Missouri case directly on point, and we have uncovered none through our own research; however, as was noted in *American Mortgage Investment Co. v. Hardin-Stockton Corporation*, 671 S.W.2d 283 (Mo.App.1984):

> The courts of our state have never recognized the mere breach of a contract as providing a basis for tort liability.... however, the complained of act or omission which breaches a contract may also be a *negligent* act which would give rise to a liability in tort. In this latter instance, *it is the act and not the breach of the contract* which serves as the basis for the tort claim. Where the parties

have entered into a contract, our common law has imposed the duty to perform with skill, care, and reasonable expedience and faithfulness in regard to the thing to be done or accomplished within the contract. The negligent failure to observe and perform any portion of that duty gives rise to an action in tort as well as an action for breach of contract. (Emphasis ours) (citations omitted).

*Id.* at 293.

■ The parties may not substitute a contractual standard for this common law obligation. 65 C.J.S. *Negligence* § 4(6)(1966).

Plaintiff has not sued for breach of contract, he has instead sought relief under tort law. As the North Carolina Supreme Court observed:

> where the injured party elects to sue in tort rather than in contract, he must accept the standard of care prescribed by the common law as the test of determining actionable negligence, i.e., that degree of care which an ordinarily prudent person would have exercised under the same or similar circumstances.

*Pinnix v. Toomey*, 242 N.C. 358, 87 S.E.2d 893, 898 (1955).

■ Plaintiff also argues that the court erred in permitting counsel for Lead Belt Materials, on cross-examination, to ask one of plaintiff's witnesses if her name used to be Schucker. At the time of the accident she was plaintiff's girlfriend; they were later married and apparently divorced prior to trial. The requested information was relevant in that it served to demonstrate the witness's possible bias and because the witness's deposition was taken under her former name. We find no error in the court's ruling.

■ Plaintiff raises two points regarding evidence of weather conditions and erosion. He first alleges that the court allowed unqualified experts to give opinions about the effect of rain on chat piles. Two witnesses testified that they had seen chat piles eroded to "sheer cliffs" by rainstorms, and

plaintiff made no objection to this testimony on the basis now asserted. When one of the witnesses later began to describe how rain created such "cliffs", plaintiff objected; the court sustained the objection and that part of the answer was stricken. Plaintiff's contention is without merit.

▆▆▆ Plaintiff also complains about the admission of U.S. weather reports from the Lambert-St. Louis International Airport, a reporting station some 65 to 70 miles from the accident site. We note first that government weather reports are admissible. *Hurley v. Illinois Central Railroad Co.*, 221 Mo.App. 478, 282 S.W. 97, 100 (1926). Plaintiff contends, however, that the distance of the reporting station from the "Elvins" chat pile makes these reports irrelevant. Before evidence can be excluded as irrelevant, it must appear so beyond doubt. "If the question is doubtful, the settled rule is that the evidence should go to the jury for their own evaluation of it". *Luechtefeld v. Marglous*, 151 S.W.2d 710, 714 (Mo.App. 1941). We find no error in the admission of these reports; their weight was for the jury.[5] In addition, there was no dispute as to the heavy rainfall in the area shortly before the accident. In fact, plaintiff's counsel, in the opening part of his argument to the jury, stated that on July 2nd "... a storm came in. I don't doubt it. A bad storm came in ...". Under these circumstances the admission of the weather reports was of little significance.

Finally, plaintiff contends that the Department of Natural Resources, in its closing argument and during cross-examination, attempted to portray plaintiff as an "outsider". No objection was made at trial on the basis now asserted, and we find no plain error.

The judgment is affirmed.

DOWD, P.J., and CRIST, J., concur.

5. We note that plaintiff has failed to file these exhibits with this court, so their exact content is unknown to us. An omitted exhibit may be treated by the court as "immaterial to the issues on appeal" under Rule 81.15 or it may be taken as supporting the judgment of the trial court. *City of Lee's Summit v. Collins*, 615 S.W.2d 592, 595 (Mo.App.1981).