ACCEPTED
01-14-00618-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/27/2015 3:17:41 PM
CHRISTOPHER PRINI
CLERK

In The
*Court of Appeals*
*First District of Texas - Houston*

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

2/27/2015 3:17:41 PM

CHRISTOPHER A. PRINE
Clerk

## NOS. 01-14-00618-CR
## 01-14-00619-CR

**DENNIS STEELE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 56th Judicial District Court
Galveston County, Texas
Honorable Lonnie Cox, Judge Presiding
Trial Court Cause Nos. 13CR3049 & 13CR3050**

## APPELLANT'S BRIEF

**DANIEL LAZARINE**
TBN: 24073197
*THE LAW OFFICE OF DANIEL LAZARINE*
440 Louisiana St., Suite 200
Houston, Texas 77002
(713) 224-4000
(713) 224-2815 (Fax)

*ATTORNEY FOR APPELLANT*
DENNIS STEELE

**ORAL ARGUMENT IS REQUESTED**

# 1IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P 38.1(a) (2011), the parties to this suit are as follows:

*FOR THE STATE:*

    At Trial:                  **Elizabeth Cuchens**
                               **Kayla Allen**

    On Appeal:            **Rebecca Klaren**

                               Galveston County
                               Assistant District Attorneys
                               600 59th Street, Suite 1001
                               Galveston, Texas 77551

*FOR APPELLANT:*

    At Trial:                  **James Dennis Smith**
                               4615 Southwest Freeway
                               Houston, Texas 77027

    On Appeal:            **Daniel Lazarine**
                               TBN: 24073197
                               440 Louisiana St., Suite 200
                               Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.............................................ii

TABLE OF CONTENTS.......................................................................iii

INDEX OF AUTHORITIES..................................................................v

STATEMENT REGARDING ORAL ARGUMENT............................1

STATEMENT OF THE CASE...............................................................2

ISSUES PRESENTED...........................................................................3

      POINT OF ERROR ONE...............................................................3

      POINT OF ERROR TWO...............................................................3

      POINT OF ERROR THREE...........................................................3

STATEMENT OF FACTS.....................................................................4

SUMMARY OF THE ARGUMENT.......................................................9

ARGUMENTS AND AUTHORITIES..................................................11

      POINT OF ERROR ONE.............................................................11

            **Standard of Review**..........................................................11

            **Argument & Authorities**...................................................11

            **Harm Analysis**.................................................................19

      POINT OF ERROR TWO.............................................................20

            **Standard of Review**..........................................................20

            **Argument & Authorities**...................................................20

**Harm Analysis**................................................**23**

POINT OF ERROR THREE...................................................24

**Standard of Review**...............................................**24**

**Argument & Authorities**...........................................**25**

**Harm Analysis**.....................................................**27**

**PRAYER**..............................................................**28**

# INDEX OF AUTHORITIES

## Cases

*Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1984)..........................19, 23

*Bignall v. State,* 887 SW.2d 21, 23 (Tex. Crim. App. 1994)...........................21

*Burden v. State.* 55 S.W.3d 608 (Tex.Crim.App. 2001)...............................24

*Bufkin v State,* 207 S.W.3d 779 (Tex. Crim. App. 2006)............................11

*Ex parte Watson,* 306 S.W.3d 259 (Tex. Crim. App. 2009) *(op. on reh'g)*..12, 13, 17

*Ferrel v. State,* 55 S.W.3d 586 (Tex. Crim. App. 2001)...........................11, 20

*Guzman v. State,* 188 S.W.3d 185 (Tex. Crim. App. 2006)...........................13

*Hall v. State,* 225 S.W.3d 524 (Tex. Crim. App. 2007)......................12-15, 18

*Hayes v. State,* 728 S.W.2d 804 (Tex. Crim. App. 1987)...........................20

*Hooper v. State,* 214 S.W.3d 9 (Tex. Crim. App. 2007)..........................25, 26

*Jackson v. Virginia,* 443 U.S. 307 (1979).........................................24, 25

*Luck v. State,* 588 S.W.2d 371 (Tex. Crim. App. 1976).............................22

*McKinney v. State,* 207 S.W.3d 366 (Tex. Crim. App. 2006).......................12

*Miller v. State,* 815 S.W.2d 582 (Tex. Crim. App. 1991)...........................21

*Ortega v. State,* 171 S.W.3d 895 (Tex. Crim. App. 2005).........................13, 14

*Ovalle v. State,* 13 S.W.3d 774 (Tex. Crim. App. 2000)...........................23

*Porteous v. State,* 259 S.W.3d 741 (Tex. App.—Houston [1st Dist.] 2007)...21, 22

*Reed v. State,* 703 S.W.2d 380 (Tex. App.—Dallas 1986, pet. ref'd)..............18

*Rice v. State,* 333 S.W.3d 140 (Tex. Crim. App. 2011)............................21

*Richardson v. State*, 879 S.W.2d 874 (Tex. Crim. App. 1993)..................25, 27

*Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008)..........................13

*Smith v. State*, 676 S.W.2d 584 (Tex. Crim. App. 1984)...........................21

*Temple v. State*, 390 S.W.3d 341 (Tex.Crim.App. 2013)...........................24

*Trevino v. State*, 100 S.W.3d 233 (Tex. Crim. App. 2003) (per curium)..........23

*Vasquez v. State*, 389 S.W.3d 361 (Tex. Crim. App. 2012)........................11

**Rules**

TEX. CODE. CRIM. PROC. ANN.art. 37.09 (West 2006)...................11, 15

TEX. CODE CRIM. PROC. ANN. art. 36.19.................................23

TEX. PEN. CODE ANN. Sec. 38.03 (Vernon 2003)..........................15, 16

TEX. PEN. CODE ANN. 9.31(c) (Vernon 2003)................................21

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 39.7, Appellant hereby requests oral argument. Counsel is of the opinion that oral argument would serve to emphasize and clarify the important legal points regarding this appeal.

## STATEMENT OF THE CASE

This appeal is from two convictions for Assault on a Public Servant, in which the Appellant received fifty (50) years confinement in the Texas Department of Criminal Justice - Institutional Division. Appellant was indicted for Assault on a Public Servant on December 3, 2013. Trial was had in the 56th District Court, The Honorable Lonnie Cox, Judge Presiding.

The jury found Appellant guilty of both counts of Assault on a Public Servant. Following punishment evidence, the jury assessed Appellant's sentences at fifty (50) years.

A Motion for New Trial was filed on July 16, 2014 and overruled by the Court on September 23, 2014. Notice of Appeal was filed June 18, 2014, and this brief follows.

2

## ISSUES PRESENTED

**POINT OF ERROR ONE:**

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING COUNSEL'S REQUEST FOR A JURY CHARGE INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF RESISTING ARREST

**POINT OF ERROR TWO:**

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING COUNSEL'S REQUEST FOR A JURY CHARGE INSTRUCTION ON SELF DEFENSE

**POINT OF ERROR THREE:**

THE EVIDENCE IS INSUFFICIENT TO PROVE THAT APPELLANT ASSAULTED E. CISNEROS

## STATEMENT OF FACTS

On November 6, 2013, at the 2200 block of 13th Avenue, in Texas City, Texas, a project superintendent and his crew worked on a public street and drainage system repair project. 3 RR 141. At around 5:15 p.m., Mr. Gonzalez, the project lead, observed a vehicle drive through a barricade and crash into a large pile of dirt. 3 RR 142. Soon thereafter, Mr. Gonzalez watched this vehicle burst into flames. 3 RR 144. He and several coworkers immediately rushed over to the vehicle and removed the driver from the burning car. 3 RR 145. Residents from across the street called 9-1-1. 3 RR 146. Officers with the Texas City Police Department and representatives of the Texas City Fire Department arrived shortly thereafter. *Id.* Appellant was identified as the driver of this vehicle. 3 RR 158. Appellant was unable to stand on his own, smelled like alcohol and generally appeared to be intoxicated. 3 RR 146-48. Appellant was taken into custody and transported to the Texas City Jail. 3 RR 159. Officer Berg testified that he detained Appellant for a driving while intoxicated (DWI) investigation. *Id.*

Officer Berg elected to conduct this DWI investigation at the police station rather than at the scene of the crash. 3 RR 166-67. Upon arriving at the police station, jail staff noticed that Appellant appeared to be intoxicated. 3 RR 236. Officer Berg escorted Appellant directly to the room designated for DWI investigations. 3 RR 166-67. This room was purposed specifically for DWI investigations, and it contained relevant paperwork and an Intoxilyzer for breath

4

tests. *Id.* Officer Berg administered a battery of standardized field sobriety tests, formally arrested Appellant, and then asked Appellant to give a specimen of his breath. *Id.*; 3 RR 177-83. Appellant agreed to do so, and the breath test result was 0.223/0.208 - nearly three time the legal limit. 3 RR 175.

At the conclusion of the DWI investigation, Officer Berg escorted Appellant to one of several booking cells. 3 RR 170; 3 RR 237. Testimony revealed that at the Texas City Jail, there are numerous jail cells. 3 RR 237. Near the booking area, there are two booking cells which are used to temporarily hold inmates while they are booked in or out of the jail, and for transport to Galveston County Jail. 3 RR 237-39. These empty cells are around 8 feet by 8 feet and contain no bed or toilet. 3 RR 164; 184. During the "booking" process, jail staff members issue shoes to the inmates, receive their property for safekeeping, and review with the inmate a list of intake questions. 3 RR 196. There are also general jail cells which are used to hold inmates after they have been "booked in." 3 RR 237. Finally, there is also a sobriety room - affectionately referred to as the "drunk tank" - which is a large room designed for inmates who law enforcement believe to be intoxicated. 3 RR 254; 218-19. This room is suitable for such a purpose because it is devoid of all potentially injurious objects, featuring only a toilet. 3 RR 85, 184; 218-19. Officer Berg testified that even after his DWI investigation revealed that Appellant was nearly three time the legal limit, he did not place Appellant into the drunk tank. 3 RR 170; 175. Rather, he placed Appellant into a regular booking cell. 3 RR 170.

5

Testimony at trial detailed that intoxicated persons are generally placed into the drunk tank so that they can sober up before they are transported to a general jail cell. 3 RR 218-219. Still, Appellant was not transported to the drunk tank. 3 RR 170. Appellant eventually laid down on the ground, in the fetal position, with his arms and head inside his shirt, and fell asleep. 3 RR 203.

Appellant lay sleeping in the holdover cell for approximately thirty minutes before Jailer Stephania Jackson elected to transport him to another cell. 3 RR 225. Jackson testified that her uniform consisted of a dark shirt - she did not wear a police officer's uniform because she was not a peace officer and her jailer uniform had not yet been delivered. 3 RR 216. Testimony was that Jailer Jackson elected to transport Appellant because she needed to use that particular holdover cell to prepare for an inmate transfer to the Galveston County Jail, located in Galveston, Texas. 3 RR 239. Jailer Jackson testified that when preparing for a transfer of inmates to the county jail, they place male and female inmates into separate holdover cells. 3 RR 217. Jackson testified that the other holdover cell was dirty. *Id.* There was also testimony that Appellant had urinated on himself at some point after his arrest, leaving the sanitation in that particular holdover cell in question as well. 3 RR 273.

When Jackson initially approached Appellant to awaken him, Appellant offered a verbal response but did not comply. 3 RR 224. Appellant was asleep. *Id.* Having made the decision that Appellant nevertheless needed to be transferred into

6

a different cell, Jackson called for another officer to assist her. 3 RR 195, 202-04.

Jailer (now Officer) Pierre Owens, Jr. and Officer Cisneros responded to this call. 3 RR 202-04. Owens was also a jailer at that time. 3 RR 234-35. Owens and Cisneros testified that they approached Appellant and requested that he voluntarily get up and move to a different cell. 3 RR 242. Appellant did not get up. *Id.* Owens and Cisneros testified that they informed Appellant that if he did not do as they commanded, Appellant would be "escorted" to a different cell. 3 RR 243. Appellant did not get up. *Id.* Cisneros and Owens then approached Appellant and each grabbed one of his arms in order to life him up and transport him. *Id.* At this time, Appellant began resisting, and a struggle broke out between the officers and Appellant. 3 RR 262-64; 4 RR 15, 18. Testimony revealed that the officers employed various techniques to subdue Appellant in order to transport him to a different cell. Specifically, Owens and Cisneros took Appellant to the ground, then piled on top of him, using their combined body weight to pin Appellant in the corder of the holdover cell. 3 RR 251; 4 RR 41-44, 51. Testimony revealed that during this ruckus, Owens got scratched. 3 RR 246. Cisneros testified that in the struggle, Appellant kicked, hit, bit, and scratched him. 4 RR 25.

Corporal Moreno responded to Jailer Jackson's call for additional help. 3 RR 210. Moreno arrived at the jail, entered immediately, and elected to use his taser, dry stunning and tasing Appellant numerous times. 4 RR 18-19. As a result, Appellant stopped resisting and was left alone in the same holdover cell. 3 RR 265.

7

Appellant later complied with the requested transport to the drunk tank. 3 RR 172-73.

Cisneros and Owens were transported to a local hospital. 3 RR 248; 4 RR 19. Evidence showed that Owens suffered several scratches to his arm. 3 RR 272. Evidence showed that Cisneros suffered several scratches to his arm which drew blood. 4 RR 19-24.

## SUMMARY OF THE ARGUMENT

Appellant made a timely objection to the court's charge at the close of evidence because the proposed jury charge did not contain the lesser included offense of Resisting Arrest, Search, or Transport. Appellant specifically requested this instruction but the trial court denied his request, thereby abusing its discretion. After analyzing the statutory elements of Assault on a Public Servant and Resisting Arrest, Search, or Transport, and examining the specific allegations of the indictments, this court should find that Resisting Arrest, Search, or Transport is a lesser included offense in this case. Because the evidence at trial revealed that Appellant resisted transport while in custody as an officer and jailer were transporting him from one cell to another, the State's witnesses described this incident as resisting transport, and because the injuries could have been incidental, a rational jury could have concluded that Appellant was guilty of Resisting Arrest, Search, or Transport only. Thus, the trial court abused its discretion when it denied Appellant's request that the jury be charged on this lesser included offense.

Appellant also requested that the court's charge at the close of evidence include an instruction on the law of self defense. Yet, the trial court denied this request and submitted a charge that omitted this instruction. At trial, there was testimony that the officers attempted to transport Appellant from one jail cell to another cell by choice and then, because Appellant did not wake up and stand up immediately, the officers grabbed him by both arms and abruptly pulled him up off

9

the ground. Because Appellant didn't cooperate, the officers slammed Appellant to the ground and piled on top of him. One officer applied the pressure of his body weight to Appellant while another officer held Appellant's head back by his chin. Because there was some evidence that the police used excessive force in the record, the trial court should have charged the jury on self defense.

The evidence at trial is insufficient to sustain Appellant's conviction for Assault on a Public Servant on "E. Cisneros" because the "Officer Cisneros" who testified at trial never identified himself as "E." Cisneros or by any first name that begins with the letter "E." Nor did Cisneros state that he was the person named in the indictment or the complainant in the case. Despite some evidence that could lead a jury to speculate that this person who testified was the same person named in the indictment, the evidence is legally insufficient to do so.

# ARGUMENTS AND AUTHORITIES

## POINT OF ERROR ONE

### THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING COUNSEL'S REQUEST FOR A JURY CHARGE INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF RESISTING ARREST

**Standard of Review**

At the conclusion of the evidence, it is the court's duty to charge the jury with respect to the applicable law, legal definitions, and legal principles. *Vasquez v. State*, 389 S.W.3d 361, 367-68 (Tex. Crim. App. 2012). Intermediate courts should not apply the usual rule of appellate deference to trial court rulings when reviewing a trial court's decision to deny a requested defensive jury instruction. *Bufkin v State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). On the contrary, appellate courts must view the evidence in the light most favorable to the defendant's requested instruction. *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

**Argument & Authorities**

The Legislature has specified when an offense is a lesser-included offense. *See* TEX. CODE CRIM. PROC. ANN. ART. 37.09 (West 2006). Specifically, an offense is a lesser included offense if:

> 1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

11

2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

4) it consists of an attempt to commit the offense charged or an otherwise included offense.

*Id.* Expounding upon this statute, the Court of Criminal Appeals has announced that intermediate courts should use a two-pronged test to determine whether a charge on a lesser included should be given: (1) Is the requested charge a lesser-included offense of the charged offense?; and (2) Is there trial evidence that supports giving the instruction to the jury?. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *McKinney v. State*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006).

In *Hall v. State*, the Court of Criminal Appeals announced that the first step in this analysis is to determine whether the lesser included offense is included within the proof necessary to establish the offense charged. *Hall v. State*, 225 S.W. 3d 524, 531 (Tex. Crim. App. 2007). This step involves a question of law. *Id.* In *Hall*, the Court of Criminal Appeals adopted the "cognate-pleadings approach" for the first step of the analysis. *Id.* at 535. This approach was reaffirmed in *Ex parte Watson*, where the court wrote:

> an offense is a lesser included offense of another offense .... if the indictment for the greater inclusive offense either: 1) alleges all of the elements of the lesser included offense or 2) alleges elements plus facts

12

(including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.

*Watson*, 306 S.W.3d 259 (Tex. Crim. App. 2009) (op. on reh'g).

The second step of the analysis asks whether there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Guzman v. State*, 188 S.W.3d 185 (Tex. Crim. App. 2006); *Hall*, 225 S.W.3d at 536. Courts should ask whether the lesser-included offense is "a valid, rational alternative to the charged offense." *Hall* at 536; *See also Segundo v. State*, 270 S.W.3d 79, 90-91 (Tex. Crim. App. 2008).

Appellant made a timely objection to the court's charge and requested an instruction on the lesser included offense of Resisting Arrest, Search, or Transport. 4 RR 63-66. Thus, error is properly preserved for review.

Standard Used at Trial

In response to Appellant's objection to the court's charge and request for inclusion of the lesser included offense of Resisting Arrest, Search, or Transport, the trial court analyzed whether the jury should be charged with the lesser-included offense of Resisting Arrest, Search, or Transport. *Id.* Here, to contradict Appellant's request for a lesser included instruction on Resisting Arrest, Search, or Transport, the State cited to *Ortega v. State*, 171 S.W.3d 895 (Tex. Crim. App. 2005) and argued that Resisting Arrest, Search, or Transport is not a lesser-included offense of Assault on a Public Servant because the two charges did not meet the

13

*Blockburger* test for analyzing claims of Double Jeopardy. 4 RR 64. The trial court denied Appellant's request. 4 RR 66.

Although *Ortega* does stand for the proposition that Assault on a Public Servant and Resisting Arrest are separate offense for Double Jeopardy purposes, the reviewing court in this case should determine whether the requested lesser included offense should have been submitted to the jury within the framework of the cases and statute cited above.

<u>Elements of Assault on a Public Servant and Resisting Arrest</u>

The first step in the analysis is to decide whether Resisting Arrest is a lesser included offense of Assault Public Servant as charged. As specified above, this is a question of law, and the court should consider the statutory elements of Assault on a Public Servant and factual allegations as laid out in the indictment and then compare them to the elements of Resisting Arrest to determine whether the lesser included offense is within the proof necessary to establish the offense charged. *See Hall* at 531. In the indictments, the State alleged the following:

> 1) Appellant
> 2) Intentionally, knowingly, or recklessly
> 3) Caused bodily injury to [E. Cisneros / P. Owens]
> 4) by hitting with his hand, kicking with his foot or leg, scratching or cutting with his fingernail, or biting with his teeth
> 5) Appellant did know that [E. Cisneros / P. Owens] was a public servant, to-wit: a [peace officer / employee]
> 6) [E. Cisneros / P. Owens] was lawfully discharging an official duty, to-wit: attempting to restrain or control Appellant

14

I CR 6; II CR 5[1]. The elements of Resisting Arrest, Search, or Transport are as follows:

1) Appellant
2) Intentionally
3) Prevents or obstructs
4) Someone he knows is a peace officer or a person acting in a peace officer's presence and at his direction
5) from effecting an arrest, search, or transportation of the actor
6) by using force against the peace officer or another

TEX. PENAL CODE SEC. 38.03 (West 1994). Thus, the question is whether the elements of Resisting Arrest, Search, or Transport are established by the proof of the same or less than all the facts required to establish the offense of Assault on a Public Servant as modified by the indictments. *See* TEX. CODE CRIM. PROC. ART. 37.09(1) (West 1974); *Hall*, 225 S.W.3d at 524.

The facts required to prove the lesser offense of Resisting Arrest, Search, or Transport include several that match up perfectly and a few that do not, but still, in the end, the court should find that Resisting Arrest, Search, or Transport is indeed a lesser included offense of Assault on a Public Servant in this case.

First, regarding those elements that match up perfectly, each offense requires proof that Appellant was the person involved, that the aggrieved party is someone that Appellant knew to be a peace officer or another person that was in the presence of and acting at the direction of a peace officer. These elements match up very easily and are not a source of friction in this analysis.

---

[1] I CR refers to the Clerk's Record in 13CR3049 and II CR refers to the Clerk's Record in 13CR3050.

Second, regarding those elements that do not, upon first glance, match up perfectly. To begin with, the mental state alleged in the indictment includes "intentionally, knowingly, or recklessly" whereas Resisting Arrest, Search, or Transport requires an intentional act. I CR 6; II CR 5; TEX. PENAL CODE SEC. 38.03 (West 1994). Although Assault on a Public Servant allows for less culpable mental states than the offense of Resisting Arrest, Search, or Transport, there is clear overlap in that the elements of each offense include an intentional act. Thus, for this element, the analysis should proceed to the second step, where the court will find an abundance of trial evidence supporting an intentional act from the testimony and exhibits.

Next, with regard to the degree of force used, the indictment requires proof of bodily injury to a peace officer where the lesser offense of Resisting Arrest, Search, or Transport requires proof that the person accused used force to prevent or obstruct the officer. *Id.* Here, each offense requires a degree of force used against an officer or one acting in his presence and at his direction. It seems that the difference lies in the specific amount of force - with Resisting Arrest, Search, or Transport requiring less force that Assault; the inquiry circles around the degree of force that causes bodily injury (where a mere claim of "pain" by the aggrieved party is legally sufficient) versus the degree of force that, at the very least, prevents or obstructs an officer from effecting an arrest, search, or transport. Both offenses clearly require physical force used against a peace officer, with Resisting Arrest,

16

Search, or Transport requiring a lesser degree of force than Assault, and therefore, this element of Resisting Arrest, Search, or Transport is within the proof required for Assault on a Public Servant.

Finally, regarding the specific actions taken by the officer, the indictment requires proof that Appellant used force (and caused "pain") against an officer while he was lawfully discharging an official duty, specifically, attempting to restrain or control Appellant whereas the lesser offense of Resisting Arrest, Search, or Transport requires proof that Appellant used force to prevent or obstruct the officer from effecting an arrest, search, or transportation of Appellant. These two legal concepts do not align perfectly. Thus, the question becomes whether this element can be deduced from the factual allegations in the indictment. *Watson*, 306 S.W.3d 259. Appellant urges that this element may be deduced from the specific allegations in the indictment. The indictments include claims that the assault occurred while the officers were lawfully discharging official duties, specifically, attempts to restrain and control Appellant. It is certainly reasonable and rational to deduce that when Cisneros and Owens were restraining and controlling Appellant, he was subject to either arrest, search, or transport. Further, arrest, search, and transport are official duties of any peace officer, and go hand-in-hand with official duties to restrain and control any individual that is subject to arrest, search, or transport.

In the second step of the analysis, we must ask whether there was evidence at trial that supports giving the instruction to the jury. In other words, is Resisting Arrest, Search, or Transport "a valid, rational alternative to the charged offense." *Hall*, 225 S.W.3d at 536.

There is an abundance of trial evidence that supports giving this instruction to the jury. Jackson, Owens, and Cisneros all testified that Appellant's acts were intentional, that Appellant used force against Cisneros and Owens, that they were trying to handcuff Appellant for the specific reason that they wanted to transport him, and it is clear from the State's Exhibit 2 and the testimony that Appellant's efforts to resist transport prevented and/or obstructed the officers as they tried to transport him. Jackson testified that, when Cisneros and Owens attempted to transport Appellant within the jail, he did not cooperate and resisting being transported. 3 RR 225. Owens testified that Appellant refused to cooperate as they tried to move him, resisting their efforts to transport him. 3 RR 259-60. Owens further stated that he believed Appellant intentionally resisted transport. *Id.* Then Cisneros specifically stated that Appellant resisted transport and his efforts to handcuff Appellant. 4 RR 15, 41, 44-47. Cisneros further stated that Appellant was "struggling and resisting" when Cisneros took him to the floor. 4 RR 15, 42.

For all of the reasons mentioned above, this court should find that the offense of Resisting Arrest, Search, or Transport is a lesser included offense of

18

Assault on a Public Servant within the framework of the controlling caselaw and statutes.

## Harm Analysis

If properly preserved, jury charge error requires reversal if "some harm" is shown. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984, op. on reh'g). In *Almanza*, the Court of Criminal Appeals held that "if the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is calculated to injure the rights of the defendant, which means no more than that there must be some harm to the accused from the error. 686 S.W. 2d at 171.

Here, Appellant made a timely, specific objection to the inclusion of this erroneous instruction, and was overruled by the trial court. 4 RR 63. Appellant was clearly harmed by the trial court's refusal to include an instruction on the lesser included offense of Resisting Arrest, Search, or Transport. It was clear from all of the testimony and the exhibits that Appellant resisted efforts to handcuff and transport him to a different cell. It was also clear that Cisneros suffered an injury, and Owens as well. However, a rational jury may have concluded that Appellant was guilty only of Resisting Arrest, Search, or Transport, and that the injuries were merely incidental and that Appellant should not be found guilty of those unintentional injuries. But the jury was denied the opportunity to even consider the offense of Resisting Arrest, Search, or Transport as an option during their

19

deliberations. The State was very quick to remind the jury that they could not consider "resisting arrest." 4 RR 72. This certainly harmed Appellant. Because Appellant suffered some harm due to this error and because Appellant objected to the charge as presented and requested this instruction at the charge conference, reversal is required. For all of these reasons, this cause should be reversed and remanded for a new trial.

## POINT OF ERROR TWO

### THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING COUNSEL'S REQUEST FOR A JURY CHARGE INSTRUCTION ON SELF DEFENSE

#### Standard of Review

As stated above, intermediate courts should not apply the usual rule of appellate deference when considering a trial court's decision to deny a requested defensive jury instruction. *Buskin*, 207 S.W.3d at 782. Instead, appellate courts must view the evidence in the light most favorable to the defendant's requested instruction. *See Ferrel*, 55 S.W.3d at 591.

#### Argument & Authorities

When properly requested, a trial court must instruct the jury on every defensive theory raised by the evidence, whether such evidence or testimony was produced by the prosecution or the defense. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). This is true regardless of whether such evidence is strong or weak, un-impeached or contradicted, and regardless of what the trial court may

20

or may not think about the credibility of this evidence. *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). The defendant is not required to testify to raise the issue of self-defense. *Reed v. State*, 703 S.W.2d 380, 384 (Tex. App.—Dallas 1986, pet. ref'd). Self-defense may be raised by the testimony of witnesses who testify to the defendant's acts and words at the time of the offense. *Id.* at 384-85 (*citing Smith v. State*, 676 S.W.2d 584 (Tex. Crim. App. 1984)). To be entitled to an instruction on self defense when resisting an arrest or search that a defendant knows is being made by a peace officer, there must be some evidence in the record to raise the issue of whether the peace officer used or attempted to use greater force than necessary in attempting to arrest or search the defendant. *Porteous v. State*, 259 S.W.3d 741, 748 (Tex. App.—Houston [1st Dist.] 2007). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Bignall v. State*, 887 SW.2d 21, 23 (Tex. Crim. App. 1994).

The Penal Code provides that the use of force to resist an arrest, search or transport is justified:

> 1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and

> 2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

TEX. PENAL CODE SEC. 9.31(c) (West 2007).

At the charge conference, Appellant very clearly objected to the court's charge and requested the additional instruction of self-defense. Specifically, Appellant requested that the jury charge include the law of self defense and the court overruled his request. 4 RR 63-68. Thus, the error was properly preserved for appellate review.

At trial, there was more than a scintilla or "some evidence" to raise the issue of whether the officers used "greater force than necessary" in their handling of Appellant. *See Porteous*, 259 S.W.3d at 748; *See also Bignall*, 887 S.W.2d at 23. From the video in State's Exhibit 2, a rational juror could conclude that before Appellant offered any actual resistance with force, the officer used greater force than was necessary and Appellant merely reacted to said excessive force in self defense. Further, testimony clearly showed that Appellant was lying on the ground, asleep, when officers suddenly grabbed each of his arms and yanked him up from the ground, then when he didn't cooperate and reacted to them, they slammed him to the ground and piled on top of him. 3 RR 251; 4 RR 41-44, 51. Owens even held Appellant's head back by gripping Appellant's chin with his hands. 3 RR 271-72.

Once a defendant meets the initial burden of producing some evidence to justify submission of a self-defense instruction, the State must persuade the jury beyond a reasonable doubt that the defendant did not act in self-defense. *Luck v. State*, 588 S.W.2d 371, 375 (Tex. Crim. App. 1976). Because Appellant presented more than a scintilla or "some evidence" to justify the submission of a self defense

22

instruction, that instruction should have been submitted to the jury. At the charge conference, the State argued the weight of this evidence. Yet, the perceived strength or weakness of the evidence is not the proper focus; because there was some evidence of excessive force in the record, some evidence to suggest Appellant acted in self defense, that instruction should have been submitted to the jury.

## Harm Analysis

Reversal is required if Appellant suffered "some harm" because of the denial of his requested jury instruction. *Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000) (*quoting Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If the charge contains error, and that error has been properly preserved by an objection or requested instruction, reversal is required if the error is "calculated to injure the rights of the defendant," meaning there must be some harm. TEX. CRIM. PROC. ART. 36.19; *Trevino v. State*, 100 S.W.3d 233, 242 (Tex. Crim. App. 2003) (per curium); *Almanza*, 686 S.W.2d at 171. "Unless all harm was abated, appellant suffered 'some' harm." *Miller*, 815 S.W.2d at 586 n.5.

The jury charge gave the jury the option of finding appellant guilty or not guilty of Assault on a Public Servant but denied the jury the fair option to consider our law on self defense, despite there being some evidence than officers used greater force than was necessary in their handling of Appellant. That the State or trial court believed this evidence to be unpersuasive is irrelevant. Just as the State

23

trial court believed this evidence to be unpersuasive is irrelevant. Just as the State intentionally pointed out to the jury that Resisting Arrest, Search, or Transport was not included in the jury charge, it was surely understood that the principles of self defense were not to be considered by the jury, leading them to convict Appellant of the charged offense. *See* 4 RR 72.

Because the trial court denied Appellant's request for an instruction on self-defense, counsel was not able to present this defensive theory to the jury for its consideration and, therefore, suffered "some harm" from the court's denial of an instruction on self-defense.

## POINT OF ERROR THREE

### THE EVIDENCE IS INSUFFICIENT TO PROVE THAT APPELLANT ASSAULTED E. CISNEROS

### Standard of Review

When reviewing the legal sufficiency of the evidence to support a conviction, the appellate court should review the evidence in a light most favorable to the verdict to determine if any rational jury could have found beyond a reasonable doubt the essential elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). This standard applies in both direct and circumstantial evidence cases. *Burden v. State*. 55 S.W.3d 608, 613 (Tex. Crim. App. 2001).

24

## Argument & Authorities

A guilty verdict based on legally insufficient evidence violates the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. *Richardson v. State*, 879 S.W.2d 874 (Tex. Crim. App. 1993). The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses, and the jury is permitted to draw reasonable inferences from facts as long as the evidence presented supports the jury's inferences. *Jackson*, 443 U.S. at 319. Furthermore, juries have the ability to draw their own conclusions supported by the evidence presented at trial, however, juries cannot reach their own conclusions based on speculation or factually unsupported inferences or presumptions. *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007).

In this case, prior to trial, the State moved to amend the indictment in 13CR3049 to change the complainant listed from "W. Cisneros" to "E. Cisneros." *See* I CR 6-7. The trial court granted the State's motion and amended the face of the indictment consistent with the State's motion. *Id.* Thus, the State was required to present sufficient evidence such that a rational jury could find beyond a reasonable doubt that Appellant assaulted a peace officer by the name of E. Cisneros.

However, at trial, the person who testified and identified himself as "Officer Cisneros" with Texas City Police Department never actually identified himself as "Officer E. Cisneros" or "Officer Eric Cisneros," or anything else other than

Officer Cisneros. *See* 4 RR 6-59. Indeed, Cisneros testified that he was present at the jail that day, and that Appellant bit, scratched, and struck him, causing bodily injury to him. *Id.* But he never identified himself as the complaining witness, nor did anyone else at trial. Nor was this witness ever identified as the person named in the indictment in 13CR3049. *Id.*

It is true that Jailer Jackson testified that an Officer Eric Cisneros was present at the scene and assisted her when Appellant did not respond to her commands initially, but her testimony alone is insufficient to meet the elements of the indictment. See 3 RR 225-29. For example, Jackson testified that she observed Cisneros and Owens reach for Appellant's arms and at that time she saw Appellant grab Cisneros's arm. 3 RR 205. But that's all that Jackson observed at that time because, after Appellant began resisting, she immediately left the area to call for backup. 3 RR 209-10. In fact, at this point, Jackson testified that "after they hit the floor" she "walked back to the booking area, which is a secured area" to call for additional officers. 3 RR 210. Jackson next observes Corporal Moreno enter the cell and watches Cisneros exit. 3 RR 201-11.

The jury is not permitted to draw conclusions based on speculation because doing so is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Hooper*, 214 S.W.3d at 16. As such, this jury was not permitted to speculate that the Officer Cisneros who testified is the same Officer E. Cisneros named in the indictment or that he is the same person who Jackson referred to

26

during her testimony. While it is true that certain bits of testimony may support the verdict, the State failed to present sufficient evidence to sustain a conviction for Assault on a Public Servant in Cause number 13CR3049. Given this deficiency of proof, the only way that the jury could have concluded that Appellant was guilty in 13CR3049 is if they irrationally overlooked the details of the complainant's name or speculated that the person who testified must be the person named in the indictment and jury charge. For all of these reasons, there is insufficient evidence to sustain this conviction, and the guilty verdict is contrary to our laws.

## Harm Analysis

A guilty verdict based on legally insufficient evidence violates the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. *Richardson*, 879 S.W.2d 874. As argued above, the guilty verdict in cause 13CR3049 is based on insufficient evidence. As such, this court must reverse the conviction in this cause and render an acquittal.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellant prays that this Court reverse Appellant's conviction, and grant any other relief that may be appropriate.

Respectfully submitted,

/s/ Daniel Lazarine
**DANIEL LAZARINE**
TBN: 24073197
440 Louisiana Street, Suite 200
Houston, Texas 77002
713-224-4000
713-224-2815 (Fax)
dlazarine@icloud.com
***Attorney for Appellant***

28

## CERTIFICATE OF SERVICE

This is to certify that on the 27th day of February, 2015, a true and correct copy of the above and foregoing Appellant's Brief was served on the Galveston County District Attorney's Office, 600 59th Street, Suite 1001, Galveston, Texas, by certified mail.

/s/ Daniel Lazarine
**DANIEL LAZARINE**

29

# CERTIFICATE OF COMPLIANCE

Pursuant to TEX.R.APP.P. 9.4(1)(i)(1), I certify that this document complies

with the type-volume limitations of TEX.R.APP.P. 9.4(i)(2)(D):

1. Exclusive of the exempted portions set out in TEX.R.APP.P. 9.4(i)(1), this document contains 4,257 words.

2. This document was prepared in proportionally spaced typeface using Times New Roman 14 for text.

/s/ Daniel Lazarine
**DANIEL LAZARINE**